# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

DELMARCO TURNER,

    Petitioner,

        v.                                                                                                   Case No. 16-CV-862

BRIAN FOSTER,

    Respondent.

## DECISION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Delmarco Turner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Habeas Petition, Docket # 1.) Turner is currently serving a fifty-year sentence following his conviction for armed robbery with threat of force, felon in possession of a firearm, and theft of moveable property. (*Id.* at 2.) Turner argues that his conviction and sentence are unconstitutional. For the reasons stated below, Turner's petition will be denied and the case dismissed.

## BACKGROUND

As described by the court of appeals, Turner's convictions were based on an incident in which three men and one woman forced their way into a residence where they took cash, credit cards, jewelry, a gun, and other items from the residents at gunpoint. (*State of Wisconsin v. Turner*, Appeal No. 2011AP2865 (Wis. Ct. App. Mar. 28, 2013), Docket # 1-1 ¶ 2.) One of the robbers had three gold teeth and wore a brown jacket, and another wore a stocking mask over braided hair. (*Id.*) The credit card taken during the robbery was used a few hours later at

a truck stop in Illinois. (*Id.*) The victims were able to identify several of the robbers, including Turner, who was wearing a brown jacket, from the truck stop's surveillance video. (*Id.*)

Turner, who began serving a sentence in Missouri while the crime was still being investigated, filed a request for speedy disposition pursuant to the Interstate Agreement on Detainers (IAD) on October 29, 2009. (*Id.* ¶ 3.) At a trial held in March 2010, the jury acquitted Turner on two counts and failed to reach a verdict on the remaining counts, resulting in a mistrial on those counts. (*Id.*) At a second trial on June 23, 2010, a jury convicted Turner of two counts of armed robbery with threat of force, possession of a firearm by a felon, and theft of moveable property. (Judgment of Conviction, Docket # 16-1.)

The Wisconsin Court of Appeals affirmed Turner's judgment of conviction in a written decision dated March 28, 2013. (Docket # 1-1.) Turner's petition for review with the Wisconsin Supreme Court was denied on August 1, 2013. (Docket # 16-6.) Turner later filed a motion for postconviction relief under Wis. Stat. § 974.06 (Docket # 16-7), and then amended the motion (Docket # 16-13). The circuit court denied the amended motion and the court of appeals affirmed. (Docket # 16-18.) Turner's petition for review with the Wisconsin Supreme Court was denied on June 15, 2016. (Docket # 16-20.)

In his habeas petition in this court, Turner raised four grounds for relief: (1) violation of his right to self-representation; (2) violation of his right to present a defense; (3) ineffective assistance of trial counsel; and (4) ineffective assistance of appellate counsel. (Docket # 1 at 6–10.) I granted Respondent's motion to dismiss Ground Two and part of Ground Three as procedurally defaulted, but allowed Turner to proceed on Ground One (violation of the right to self-representation); claim one of Ground Three (ineffective assistance of trial counsel for failure to file a motion to dismiss charges based on a violation of the IAD); and Ground Four

(ineffective assistance of appellate counsel). (Docket # 23.) Turner filed his brief in support of his petition on January 8, 2019 (Docket # 37) and the Respondent filed his brief on March 22, 2019 (Docket # 40). According to the scheduling order in this case, Turner had fifteen days to file a reply brief. (Docket # 30.) That deadline has now passed without a reply from Turner, so I proceed to resolve the claims.

## STANDARD OF REVIEW

Turner's petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, a writ of habeas corpus may be granted if the state court decision on the merits of the petitioner's claim (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> [U]nder the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

*Washington*, 219 F.3d at 628. The court further explained that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the

3

state court 'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 413).

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." *Hennon v. Cooper*, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." *Hall v. Washington*, 106 F.3d 742, 748–49 (7th Cir. 1997). In *Morgan v. Krenke*, the court explained that:

> Unreasonableness is judged by an objective standard, and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565–66 (7th Cir. 2000) (quoting *Williams*, 529 U.S. at 411), *cert. denied*, 532 U.S. 951 (2001). Accordingly, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. *Washington*, 219 F.3d at 627.

## ANALYSIS

### 1. Ground One: Right to Self-Representation

Turner argues that the circuit court's refusal to allow him to represent himself violated his right to self-representation under *Faretta v. California*, 422 U.S. 806 (1975). (Habeas Petition, Docket # 1 at 7–8; Pet.'s Br., Docket # 37 at 21–44.) *Faretta* held that the right to self-representation is implied in the Sixth Amendment. 422 U.S. at 819. This implicit right to self-representation applies to defendants who are mentally competent, whose waiver of the right to counsel is knowingly and intelligently made, and whose request to proceed *pro se* is

4

made clearly and unequivocally. *See Freeman v. Pierce*, 878 F.3d 580, 582 (7th Cir. 2017) (citing *Faretta*, 422 U.S. at 835).

In this case, Turner's counsel withdrew after the first trial ended in a mistrial, and substitute counsel could not be found in time for the scheduled date of the second trial on April 19, 2010. (Docket # 29-3 at 3.) On April 6, 2010, with just two weeks remaining before the second trial, the court informed Turner that the trial could proceed on April 19th only if Turner represented himself; otherwise, the trial would be rescheduled and substitute counsel found. (*Id.* at 7–8.) Turner stated that he was not willing to waive his right to a trial within 180 days. (*Id.* at 8.) When the court asked Turner to clarify if he was asking to represent himself, Turner replied, "If that's what it come down to basically." (*Id.* at 8–9.) The court engaged with Turner as follows:

> COURT: You would prefer to represent yourself and have the trial on April 19th?
>
> TURNER: I said if that's what it have to come down to.
>
> COURT: Well, it doesn't have to come down to that.
>
> TURNER: Well, because this right here, the speedy trial, the statute of Wisconsin, it says that with the 90 days of a felony. 90 days right here says on 971.10, it said 90 days to a speedy trial.

(*Id.* at 9.) The court confirmed that under the relevant statute, Wis. Stat. § 976.05, the State was indeed required to bring Turner to trial within 180 days. (*Id.*) However, the court clarified that either the first trial in March had satisfied that requirement, or there was good cause to grant a continuance based on the late withdrawal of counsel, so there was no requirement that another trial be held within the 180 days. (*Id.* at 9–11.) After further discussion, the court again asked Turner what he wanted to do:

> TURNER: You're saying what I want done?

>COURT: Yes.
>
>TURNER: Go to trial.
>
>COURT: When?
>
>TURNER: Whenever it's set for.
>
>COURT: Well, it's currently set for jury selection on April 19th, is that what you're asking me to do?
>
>TURNER: Yes, sir.

(*Id.* at 13.) The court asked Turner directly whether his sole reason for choosing to represent himself was so that the trial could occur in April, and Turner replied, "I'm just ready to get it over with."

>COURT: So you're asking to represent yourself just because you want this over with as soon as possible?
>
>TURNER: Just ready to get it done with.
>
>COURT: You would be willing to have a lawyer represent you if you could have that -- if that lawyer would agree to do it April 19th, starting on April 19th, is that right?
>
>TURNER: Yes, sir.
>
>COURT: So you don't have a fundamental conflict, or you don't have fundamental principles against having lawyers represent you?
>
>DEFENDANT: No, sir.

(*Id.* at 16–17.)

In rendering its decision, the circuit court judge explained in detail that the requirement under the IAD to bring Turner to trial within 180 days had already been satisfied. (*Id.* at 18–22.) The judge then explained that Turner's request to represent himself appeared to be based on a mistaken belief that the IAD required that he be allowed to proceed to trial on April 19th, when in reality the IAD had been satisfied by the first trial or, if not, there was

good cause to extend the deadline due to the late withdrawal of counsel. (*Id.* at 22–23.) Regarding competency, the judge noted that Turner admitted he had difficulty reading and had only an eighth-grade education. (*Id.* at 23.) The judge explained that even highly experienced attorneys had been unwilling to take on a case of this seriousness and complexity two weeks before trial, so even though Turner might be competent to represent himself under other circumstances, he would not be competent to represent himself on April 19th. (*Id.* at 23–25.) Furthermore, the judge pointed out that Turner actually did want an attorney; he only wanted to represent himself if it meant he could go to trial on April 19th. (*Id.* at 25.) The judge concluded that he would adjourn the April 19th trial to allow time for new counsel to be appointed for Turner. (*Id.* a 25–27.)

The court of appeals upheld the denial of Turner's request to represent himself. (Docket # 1-1 ¶¶ 12–15.) The court cited *Faretta* as well as its Wisconsin companion case, *State v. Klessig*, 211 Wis. 2d 194, 201–03, 564 N.W.2d 716 (1997). The court stated that, as the constitutional right to counsel must be waived in a "knowing, voluntary, and intelligent manner by a defendant who is competent to do so," the right to self-representation must be invoked "clearly and unequivocally" in conjunction with the waiver of the right to counsel. (*Id.* ¶ 12 (citing *Faretta*, 422 U.S. at 835; *Klessig*, 211 Wis. 2d at 203–04; *State v. Imani*, 2010 WI 66, ¶ 19, 326 Wis. 2d 179, 786 N.W.2d 40 (defendant must validly waive right to counsel in order to invoke right to self-representation)).) Regarding Turner's case, the court stated:

> First, it was reasonable for the circuit court to construe Turner's request for self-representation as being conditioned upon having the trial within 180 days. Once the court determined that the deadline was no longer required or feasible, the precondition for Turner's request disappeared. Moreover, contrary to Turner's apparent belief, the standard for competence to represent oneself at trial is not the same as the standard for competence to waive one's right to testify. A competence evaluation for self-representation requires an examination of the skills necessary to exercise the right being waived. Given

7

> Turner's professed difficulty reading and limited education, we cannot conclude that the circuit court's factual finding as to Turner's lack of competence to prepare for a multiple-felony trial on short notice—a precondition of Turner's waiver—was not clearly erroneous.

(*Id.* ¶ 15.)

Turner argues that the court of appeals' decision is contrary to or an unreasonable application of *Faretta* for three reasons. First, Turner argues that in applying *Klessig*, the court imposed a "deliberateness" requirement that is contrary to *Faretta.* (Docket # 37 at 28–30.) There appears to be no basis for this argument, as the court of appeals does not mention any deliberateness requirement. Second, Turner argues that the court arrived at a different outcome than *Faretta* despite materially indistinguishable facts. (*Id.* at 30–33.) Not so. *Faretta* is materially distinguishable in several important ways, including that the defendant in *Faretta* requested to represent himself well before trial, made it clear that he wanted to represent himself and he did not want a lawyer, and when his request was denied and counsel was appointed, he requested to serve as co-counsel for himself and attempted to file motions on his own behalf anyway. 422 U.S. at 807. By contrast, Turner made his request less than two weeks before the scheduled trial and it was apparent that he did *not* want to represent himself and actually *did* want a lawyer if one could be found by the trial date. All these factors make this case materially distinguishable from *Faretta*.

Finally, Turner argues that the court of appeals unreasonably applied *Faretta* to the facts of the case because Turner knowingly and intelligently decided to proceed *pro se* and was competent to choose self-representation (Docket # 37 at 33–39). Turner overlooks an important point in the court of appeals' reasoning: Turner's desire to proceed *pro se* was based entirely on the condition that the trial take place on April 19th; in other words, it was not a clear and unequivocal request to proceed *pro se*. Without any clear and unequivocal request

to represent himself, Turner had not invoked the right to self-representation. Thus, it was reasonable under *Faretta* for the court of appeals to conclude that Turner's right to self-representation had not been violated. Indeed, *Faretta* is concerned with "whether a State may constitutionally hale a person into its criminal courts and there force a lawyer upon him, even when he insists that he wants to conduct his own defense." 422 U.S. at 807. That did not happen here. At no point was Turner forced to accept the unwanted assistance of counsel—indeed, he clearly did want counsel.

In sum, the court of appeals' conclusion that Turner's self-representation rights were not violated is not contrary to or an unreasonable application of federal law. This is so even if the court of appeals' decision upholding the circuit court's competency determination is in tension with or contrary to *Faretta*, because the court of appeals reasonably upheld the circuit court's denial of Turner's request to represent himself on other grounds as described above. *See Rhodes v. Dittmann*, 783 F.3d 669, 675 (7th Cir. 2015) ("Section 2254(d) focuses on the ultimate decision of the state court, not on parts of a written opinion that might in isolation appear to be misguided but that in the end are not necessary to the outcome.") Accordingly, Turner is not entitled to habeas relief on this ground.

    2.    *Ground Three: Ineffective Assistance of Trial Counsel*

Turner argues that trial counsel was ineffective for failing to file a motion to dismiss the charges based on untimeliness under the IAD. (Docket # 37 at 47–50.)

The clearly established Supreme Court precedent for ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective assistance of counsel, Turner must show both "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Id.* at 687. To satisfy *Strickland's* performance

prong, the defendant must identify "acts or omissions of counsel that could not be the result of professional judgment." *United States ex rel. Thomas v. O'Leary*, 856 F.2d 1011, 1015 (7th Cir. 1988) (citing *Strickland*, 466 U.S. at 690). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (quoting *Strickland*, 466 U.S. at 689). A reviewing court must seek to "evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. We "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance," *id.*, and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," *id.* at 690.

To establish prejudice, it is "not enough for the defendant to show that his counsel's errors had some conceivable effect on the outcome of the [trial]." *Hough v. Anderson*, 272 F.3d 878, 891 (7th Cir. 2001). A petitioner must show "that there is a reasonable probability that, but for counsel's errors, the result of the [trial] would have been different." *Strickland*, 466 U.S. at 694. This does not mean that the defendant must show that "counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693. Rather, a "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Making this probability determination requires consideration of the totality of the evidence before the jury. *Id.* at 695. A "verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696. Additionally, under Seventh Circuit precedent, a petitioner may demonstrate that the cumulative effect of counsel's individual acts or omissions was substantial enough to meet *Strickland*'s prejudice test. *Williams v. Washington*, 59 F.3d 673, 682

10

(7th Cir. 1995) (citing *Montgomery v. Petersen*, 846 F.2d 407, 412 (7th Cir. 1988); *United States ex rel. Kleba v. McGinnis*, 796 F.2d 947, 958 (7th Cir. 1986)).

A court deciding an ineffective assistance claim need not approach the inquiry "in the same order or even . . . address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result." *Id.*

Citing *Strickland*, the court of appeals concluded that counsel did not provide ineffective assistance by failing to move for dismissal based on violation of the IAD, because there was no violation of the IAD. (Docket # 1-1 ¶¶ 4, 7–9.) The court explained that even if the March 2010 trial had not satisfied the IAD, granting a continuance was well within the discretion of the circuit court. (*Id.* ¶ 9.) Indeed, by the time counsel for Turner's second trial had been appointed, the circuit court had already determined at the April 6, 2010 hearing that the first trial satisfied the IAD, and that even if it had not, there were grounds for granting a continuance. (Docket # 29-3 at 18–25.) At a hearing on Turner's postconviction motion, counsel confirmed that his own analysis had led him to conclude that there was no IAD violation, and he had also been aware of the court's decision to that effect at the April 6 hearing. (Docket # 29-8 at 3–6.) It was clear that any motion to dismiss on that basis would have been denied, and "[f]ailure to raise a losing argument or pursue a losing motion . . . does

not constitute ineffective assistance." *Perez v. United States*, 286 F. App'x 328 (7th Cir. 2008) (citing *Whitehead v. Cowan*, 263 F.3d 708, 731 (7th Cir. 2001); *United States v. Jackson*, 103 F.3d 561, 575 (7th Cir. 1996)). Therefore, the court of appeals' decision was not contrary to or an unreasonable application of *Strickland*.

Turner argues briefly that AEDPA deference does not apply to this claim because the state court did not address the deficient performance prong. (Docket # 37 at 50.) This is not quite right. The court of appeals did not specify which prong of *Strickland* it applied, but either way, its conclusion was not contrary to or an unreasonable application of *Strickland*. Failure to make a motion that is certain to be denied is neither deficient nor prejudicial. *See Carter v. Douma*, 796 F.3d 726, 735 (7th Cir. 2015) (performance not deficient for failing to make a futile objection); *Martin v. Evans*, 384 F.3d 848, 852 (7th Cir. 2004) (where underlying claim is meritless, there is no reasonable probability of a different outcome absent the failure to raise it).

Because the court of appeals' decision that Turner was not denied the effective assistance of counsel was not contrary to or an unreasonable application of *Strickland*, Turner is not entitled to habeas relief on this claim.

    3.    *Ground Four: Ineffective Assistance of Appellate Counsel*

Finally, Turner claims that he was denied his right to the effective assistance of counsel on direct appeal. (Docket # 1 at 10.) Turner faults his appellate counsel for not objecting to testimony that was barred at the first trial but used at the second trial, and for failing to challenge certain statements in the state's closing arguments. (Docket # 1 at 10.) The Respondent argues that Turner waived this claim by not addressing it in his opening brief. (Docket # 40 at 37.) Indeed, Turner's opening brief does not address ineffective assistance of

appellate counsel, and Turner submitted no reply brief. Although the court must construe *pro se* filings liberally, *Coulter v. Gramley*, 93 F.3d 394, 397 (7th Cir. 1996), there is no filing on this issue to construe. I must therefore deem Turner's Ground Four claim abandoned. *See Wilson v. Giesen*, 956 F.2d 738, 741 (7th Cir. 1992) (*pro se* prisoner waived argument on appeal by failing to raise it until the reply brief); *Egert v. Conn. Gen. Life Ins. Co.*, 900 F.2d 1032, 1035 (7th Cir. 1990) (argument waived if not raised in opening brief).

## CONCLUSION

To obtain habeas relief, Turner must show that the state court's decision was contrary to or an unreasonable application of federal law. The state court's determination that Turner's right of self-representation was not violated was not contrary to or an unreasonable interpretation of *Faretta* because Turner did not clearly and unequivocally waive the right to counsel. The determination that trial counsel was not ineffective for failing to raise a motion based on the IAD was not unreasonable under *Strickland*, because the argument was a losing one. Turner's other claims have been dismissed or abandoned. Because Turner's petition does not present any basis for relief under 28 U.S.C. § 2254, the petition will be denied and this case dismissed.

## CERTIFICATE OF APPEALABILITY

According to Rule 11(a) of the Rules Governing § 2254 Cases, the court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, the petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved

in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, and n.4).

Jurists of reason would not find it debatable that Turner is not entitled to habeas relief. Thus, I will deny Turner a certificate of appealability. Of course, Turner retains the right to seek a certificate of appealability from the Court of Appeals pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that Turner's petition for a writ of habeas corpus (Docket # 1) is **DENIED**;

**IT IS FURTHER ORDERED** that a certificate of appealability shall not issue;

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**;

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 29th day of August, 2019.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge